4. Kathy Thompson v. Nancy Berryhill, Acting Commissioner of Social Security Mr. Forbes? Good morning. May it please the court, my name is Randall Forbes. I represent the appellant Kathy Thompson who is a disability claimant. I think ultimately social security cases boil down to what's in the RFC and then how does that relate to job numbers. And in this case it is telling that with a 9th grade claimant the RFC is written so that if she would be able to do attorney work if that work were classified sedentary. There's no of any cognitive or emotional limitations whatsoever in this RFC. Can I ask you a question just to be sure that I understand your claim? Looking back at this period, is your claim that her cognitive or emotional limitations based on the agoraphobia, the panic disorder, the depression would themselves have been enough to render her incapable of work or is it your claim that those conditions on top of the physical impairments that she also suffered were sufficient? I did not do this case at the administrative level but I can tell you that every case I do at the administrative level everything is in play. Okay but in this case, because it seems to me that what we have before us, the key issue seems to be Dr. Link's report and how much weight it ought to be given and whether the ALJ improperly gave it little weight. That's correct and when the limitations that fairly derive from that report are put into the RFC then a vocational expert evaluating all of those limitations could find that there is no work available, especially in relation to work attendance issues on the agoraphobic part of it or needing too many breaks because of psychological symptoms that may occur in the work setting, those kind of things. So the focus here truly is whether the emotional issues, the anxiety disorders rendered her incapable of work because it was already found and it's not being challenged here that the physical limitations that she experienced in that period did not do so. The ALJ found that, yes. But that's not being challenged, correct? You're correct. It was challenged at the district court level. I did not perceive that to be what I would be focusing on at this level. But you are saying that the mental limitations add into the physical picture but the question really is, as Judge Barrett said, this link report and I understand your position on that to say that she isn't just serving as a mouthpiece for Ms. Thompson. There's some professional evaluation going on here. That's correct, Your Honor. I think one of the issues that kind of derives from the ALJ's opinion is he's not holding the non-consulting, excuse me, I'm a little nervous today. I'm not sure why. He's not holding the non-consultative examiners. It's the same set of standards he's holding Dr. Link, the examiner, to. For example, he comments about the use of the word might in her conclusions and yet there are similar weasel words in the non-consultative examiners' opinions. The judge says nothing about them. He, the judge, says that Dr. Link didn't define moderate but he doesn't hold the non-examiners to the same standard. He doesn't require them to define mild. Partly because those are terms of art within Social Security and they're understood and one point is that the non-examiners and the examiner are all consultants that were retained by Social Security. It was Social Security who actually, you know, I've read probably a thousand of these psychological reports. Dr. Link's report is, Dr. Link did a good job in my non-psychologically professional opinion. Counsel, can I ask you a question about her conclusion? Sure. So she uses the word moderate at the end and she talks about the overall picture. Yes. One reason why I'm trying to get a handle on exactly, you know, what is at issue in this appeal is it does seem, and this would be reasonable for her to do so, that Dr. Link looked at the full picture. She talked about the physical impairments, you know, that the appellant suffered, which clearly would have a bearing on her depression or mental health. I mean, things were rough, right? But when she makes that assessment, she's not a medical doctor, right? She's just, she's a psychologist. So is it your position that that assessment, when she talks about her overall functioning, is referring solely to the mental capacity? Because I think the ALJ read it as referring to kind of the full picture, the physical impairments as well. Is it your position? I think, read in context, she's talking about the mental health issues. Mental health issues. And when she says moderate and attaches it to work activities, then she's essentially giving the opinion that all the work activities related to social functioning, concentration, persistence, and pace, daily activities as they relate to mental issues, all of those are in the moderate range. And this, I know I mentioned the Yerk case at least once in the argument, but this court has pretty much said that if you have a moderate gradation in concentration, that would translate in some way or another to a limitation. In the RFC? In the RFC. Otherwise, it's remandable. And, you know, here the doctor mentioned, Dr. Link mentioned, she did have a hard time maintaining concentration for over 15 minutes. Now, it seems that very few of the tasks that Dr. Link asked her to do would have consumed much more than 15 minutes. So it may be that that's why she wasn't, you know, going beyond that. That may be, Your Honor. I don't know for sure. I noticed that too. I think the other side's arguing that the idea she could complete tasks. Well, that's what I'm saying. If she could complete a task, but it's only a five-minute task, it doesn't tell you that she's going to complete a 30-minute task. That's exactly right. Yeah. And that would be our position also. I will reserve the rest of my time for rebuttal, unless you want to ask more questions. Thank you, Your Honor. Thank you. Mr. Leavitt. It's a big notebook, Mr. Leavitt. You're going to look at all of it. It's not to discuss all of it, Your Honor. Thank you. I'm not sure we have time. Good morning. David Leavitt on behalf of the Commissioner. May it please the Court. Dr. Link's opinion stood pretty much alone in the medical records as indicating significant mental limitations. But it is a pretty comprehensive psychological evaluation. She goes through quite a few pretty standard questions. She's got her, starting around page three, the mental status examination. She's asking things like name, date, time, who's the president, where does the sun rise, west, 52 weeks in a year, and on down through things. Tests are on math, tests are on speech, mood, affect. She, you know, I think that the Commissioner, I'm not quite sure what the Commissioner thinks Dr. Link should have done, but these are clearly tests that are being administered to her. Your Honor, you are correct that it is a fairly extensive mental status exam. So it's not just Dr. Link saying, you know, I'm going to write down that she feels terrible. It's much more than that. Well, part of the problem here is that there are findings from a mental status exam and then mixed into that. In the conclusion, Dr. Link specifically links her conclusions to Ms. Thompson's reported symptoms, and those symptoms were both physical and mental. But then you're talking about the top of page six, and it looks to me that really right before she writes the sentence, thank you for this referral, she says, based on the findings from this evaluation and the records supplied with the referral, Ms. Thompson is considered to be functioning at a moderate level of performance by saying, I'm doing a mental status examination. So you're really asking for a level of precision and drafting that doesn't seem realistic to me. Well, Your Honor, when Dr. Link says overall level of functioning, if you look at that term and then go back to the last Ms. Thompson's reported symptoms, that would include physical and mental. I'm not sure that that's right. The whole report is about mental and the reason for the referral. It seems to me if all she's doing is contextualizing the mental against what this woman is being asked to do on a daily basis, I'm not sure that undermines the significance of the report. The ALJ is snarky about this report. It's a very so-called opinion. It doesn't seem warranted at all. This woman has done what strikes me as an extremely standard psychological ability examination. Well, I think what the ALJ was getting at is that Dr. Link seems to look at both the physical and mental. How can you get that when one sentence out of this whole thing might get you there, but the context, and she's telling you what she does, test results on the mental status examination, and we go through pages of test results. It's like three pages worth. It just doesn't seem at all a fair description. Well, Your Honor, I think what the ALJ was also getting at is that a lot of the test results were fairly normal and that this, as Your Honor mentioned, this was a fairly extensive She can't multiply, that's for sure. She can't do arithmetic. She can't do serial sevens. She completely screws that up. Well, Your Honor, the issue with the calculations is that she multiplied instead of added. Well, in one case that, but then when she tries to do serial sevens, the page before, she comes up with 86 minus 7 is 78, and then 51 minus 7 is 47. She can't do that. She did make some mistakes in that, but what I was getting at is this was a very, as Your Honor mentioned, a fairly extensive mental status exam, and it included remembering objects after a 20-minute period, and she was able to do that, and Dr. Link didn't need to redirect her, and yet Dr. Link said she can attend to only tasks that are less than 15 minutes. That, I think, was a red flag for the ALJ in questioning where Dr. Link was getting her conclusions. These are very, very basic tests. This is an examination that's going on at the time that George W. Bush is president, and then she knows George W. Bush is president. She doesn't know where the sun rises. She says it rises in the west. She has some fairly sensible answers to judgment. She's not sure what these proverbs mean, which suggests an inability to think abstractly. People who live in glass houses should not throw stones. She said what you see is not always what it is, I guess. Right, but the other proverb, I think she pretty much got, too many cooks spoil the broth. Too many people putting in makes it bad, so she did get that proverb, and she does know a bunch of presidents and – Washington, Lincoln, Nixon, and Reagan. Well – I mean – And she did get a lot of the addition right, and if you look at – She did get the addition right. She multiplied it.  And she messes up the subtraction. But if you look at Dr. Link's opinion with the rest of the record, which is what the ALJ did – It's clearly a – I just want you to admit that it's a mental status test done by a professional that the Social Security Administration itself selected. Of course it's one piece of evidence in the record. I don't disagree with you about that at all. Yes, this – But it's the only professional. A non-examining state person isn't going to have as much of a sense of what she can do, since they've never met her. This was a report from a psychologist, but it, as I said before, it seemed to take into account physical and mental limitations. All right, I thought we'd been through that, but anyway, okay. Okay, I'm sorry. Is there – I don't think it does. I think the vast majority of the report, the test that she does is a mental status test. There are two sentences in the report, both of which appear on page six, where you could, by pushing, think that she's contextualizing her psychological opinion against the backdrop of the documents the Social Security Administration itself has given her about what this woman does for a living. She gives just a list. It is alleged that Ms. Thompson suffers from ankle problems, arthritis, panic attacks, high blood pressure, obesity, diabetes, and depression, but she's not testing about anything but the panic attacks and the depression. And counsel, let me ask a question following up on that. If Chief Judge Wood is correct here, and this is a mental status report, can the ALJ disregard it or give it as little weight as he did? Or do you think if that's correct, and it is a legitimate mental status examination, that he still would have been correct to undermine it? The ALJ is tasked with weighing the mental opinion, with all the medical opinions, so it's the ALJ's role to give medical opinions as much weight as is appropriate under the regulations. And two of the important factors under the regulations are consistency and supportability. The ALJ looked at the rest of the record and he saw that Ms. Thompson's mental health symptoms were controlled by medication. She only had specialized mental health treatment for a six-month period out of the nine months at issue here. She stopped that treatment because she felt that she met her goals. And the counselor who was seeing her described her symptoms at that point as being mild, practically on the slight level. So against that background, the ALJ had to weigh Dr. Link's opinion. Well, here's something that seems to me clearly wrong. This is on page 5 of 12 of the ALJ's opinion, where he says, First, the language of Dr. Link's statements indicates that they were based on the claimant's subjective report of symptoms made at this single interview with Dr. Link. They were not based on Dr. Link's observations of the claimant's mental status or activities, nor were they otherwise independently verified by Dr. Link. It seems to me that's not an accurate description of this report. Dr. Link is administering tests to her. That's just wrong, I think. Well, the way that I believe that the ALJ's decision should be read is that he was looking at Dr. Link's, the lack of support being that some of the information came from physical symptoms, and then looking at Ms. Thompson's report of physical symptoms, and that the evidence from the mental status exam didn't bear out the striking limitations found by or opined by Dr. Link. I see that my time is up. I was giving you a little bit extra time so that you could answer my question. So if you'd like to sum up, that would be fine. Yes, Your Honor. In this case, the ALJ was faced with Dr. Link, who was alone in the record, as opining on significant limitations. Added to that was the indication that Dr. Link based at least portions of her opinion upon physical symptoms, not just mental symptoms. And with that, the ALJ reasonably, under the regulations, afforded Dr. Link's opinion less than great weight. Therefore, we ask the court to affirm the district court. All right. Thank you. Anything further, Mr. Forbes? Unless you have questions, I think I can just address. Seeing none, thank you very much. Thanks to both counsel. We'll take the case under advisement.